# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| PATRICK S. MITCHELL, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) Case No. CIV-13-283-JHP-SPS |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

The claimant Patrick S. Mitchell requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for benefits under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons discussed below, the Commissioner's decision should be REVERSED and the case REMANDED to the ALJ for further proceedings.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work

which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term substantial evidence has been interpreted by the United States Supreme Court to require "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The Court may not reweigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Services*, 933

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if his impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), he is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that he lacks the residual functional capacity (RFC) to return to his past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account his age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on April 28, 1978, and was thirty-three years old at the time of the administrative hearing (Tr. 27, 108). He has a high school education and past relevant work as a heavy equipment operator and installer (Tr. 21). The claimant alleges inability to work since April 1, 2010 because of stage two spinal astisis, gout, and high blood pressure (Tr. 128).

## Procedural History

The claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, on August 2, 2010. His application was denied. Following an administrative hearing, ALJ Osly F. Deramus found that the claimant was not disabled in a written opinion dated February 15, 2011 (Tr. 12-23). The Appeals Council considered additional evidence submitted by the claimant but found it did not alter the outcome of the ALJ's opinion. Thus, the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 404.981.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the ability to perform less than the full range of sedentary work,

*i. e.*, that he could lift/carry up to 10 pounds occasionally and frequently, sit for up to six hours and stand or walk for up to two hours in an eight-hour workday, with the following additional limitations: (i) occasional stooping, but never crouching, crawling, or kneeling; and (ii) occasional climbing stairs but never ladders (Tr. 16-17). The ALJ concluded that even though the claimant could not return to his past relevant work, he was nevertheless not disabled because there was work he could perform, *i. e.*, order clerk (Tr. 21-22).

**Review**

The claimant contends that the ALJ erred: (i) by failing to find his impairments met Listing 1.04, (ii) by failing to properly evaluate his physical limitations, (iii) by failing to properly analyze his credibility, and (iv) by failing to make proper step five findings. The undersigned Magistrate Judge agrees that the ALJ failed to properly consider Listing 1.04, and the decision of the Commissioner should therefore be reversed.

The ALJ found the claimant's degenerative disc disease of the lumbar spine and hypertension were severe impairments, and that his gout, knee and hip complaints, and obesity were non-severe impairments (Tr. 15). A January 22, 2008 x-ray revealed developmental abnormalities of spina bifida occulta at L5, in addition to Grade I anterolisthesis L5 upon S1 apparently due to bilateral pars defects at L5 (Tr. 211). A March 2011 Lumbar spine MRI further revealed: (i) at L5-S1, grade I spondylolisthesis with bilateral pas interarticularis defects present, in addition to some broad disc bulging with foraminal spurring producing a severe right foraminal stenosis, moderate left foraminal stenosis; (ii) at L4-5, small to moderate sized central and right paracentral disc

protrusion; and (iii) some loss of height posteriorly at the L5 vertebra, which appeared to be chronic (Tr. 255-256). An MRI of the hips on the same day revealed suspicion for mild sacroiliitis bilaterally that needed to be correlated clinically and raised questions of there being a possible seronegative spondyloarthropathy (Tr. 257). The claimant was treated regularly at the Wellness Clinic of Roland, and treatment records are available from 2009 through 2012, where the claimant continually reported pain, and he was treated for chronic low back pain (Tr. 234-253, 306-321, 329-333). Further treatment notes reflect that the claimant had tenderness to palpation at the lumbar region with decreased range of motion, and positive straight leg raisers on the right beginning in October 2010, and continuously noted through January 19, 2012 (Tr. 335-382). This evidence includes evidence between October 27, 2011 and January 19, 2012, which was submitted to the Appeals Council and accepted as additional evidence (Tr. 5).

The claimant underwent two consultative examinations. On October 18, 2010, Dr. Wojciech Dulowski noted the claimant could walk on heels and tiptoes with slight pain and he did not use any assistive devices, and that the alignment of cervical, thoracic, and lumbar spine were normal, with slight tenderness in the midline of the lumbar spine (Tr. 226-227). He assessed the claimant with chronic back pain, neurologically seems intact; gout; and hypertension (Tr. 227). Dr. Seth Nodine conducted his examination on March 30, 2011. He noted the claimant's complaints of worsening back pain and in the lower extremities, and that his straight leg raise testing was normal. Noting that the claimant did not appear to be in any significant pain with range of motion, he nonetheless

indicated that the claimant had mild tenderness to palpation in the lumbar region. He assessed the claimant with lumbar back pain chronic in nature with chronic narcotic dependency. He stated that there was no previous evidence radiographically for any concerning findings, but noted the March 2011 MRI findings and that the claimant complained of radicular symptoms, and that he did not appear to be in any discomfort but that he had been taking narcotics for a long period of time (Tr. 258-264). A state reviewing physician then found the claimant could perform medium work with no other limitations (Tr. 285-291).

The claimant argues that the ALJ erred in failing to find that his impairments met Listing 1.04. Although the claimant bears the burden of proof at step three to establish that he meets or equals the requirements for a listed impairment, *see Fischer–Ross v. Barnhart,* 431 F.3d 729, 733 (10th Cir.2005), the ALJ's responsibilities at step three of the sequential analysis require him to determine "whether the claimant's impairment is equivalent to one of a number of listed impairments that . . . [are] so severe as to preclude substantial gainful activity." *Clifton v. Chater,* 79 F.3d 1007, 1009 (10th Cir.1996) [quotation omitted]. *Clifton* requires the ALJ to discuss the evidence and explain why claimant was not disabled at step three. *Id.* at 1009, *citing Cook v. Heckler,* 783 F.2d 1168, 1172–73 (4th Cir.1986). However, "a court [can] still affirm an ALJ's decision— despite the ALJ's failure to make specific step three findings—when 'confirmed or unchallenged findings made elsewhere in the ALJ's decision [i.e., at steps four and five]' 'conclusively preclude Claimant's qualification under the listings at step three' such that

'[n]o reasonable factfinder could conclude otherwise.'" *Henderson v. Astrue,* 383 Fed. Appx. 700, 701 (10th Cir. 2010), *quoting Fischer–Ross,* 431 F.3d at 734–35.

In this case, the ALJ's analysis at step three did not mention any of the listings, including Listing 1.04. The ALJ simply stated that "[t]he claimant's impairments do not meet or equal in severity the appropriate medical findings contained in 20 C.F.R. Part 404, Appendix 1 to Subpart P (Listing of Impairments)" (Tr. 16). The ALJ, however, failed to *explain* his conclusion at step three, asserting that "[n]o treating or examining physician has mentioned findings equivalent in severity to the criteria of any listed impairment" (Tr. 16). Unlike in *Fischer–Ross,* the ALJ's findings at step four and step five, along with the medical evidence of record, are not such that no reasonable factfinder could conclude that the claimant does not satisfy the criteria for Listing 1.04.

Listing 1.04 requires a showing that the claimant is suffering from a disorder of the spine and also requires a showing of either of the following:

> A) Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); or
> B) Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; or
> C) Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Pt. 404, Subpt. P, App. 1.

During his step four discussion, the ALJ mentioned medical evidence which showed clinical findings to support the claimant's chronic low back pain, including the congenital defect and decreased range of motion and positive straight leg raising tests reported by his treating physicians (Tr. 18-19). The ALJ also mentioned that the record supported a number of postural limitations related to the claimant's back pain and exhibited during postural maneuvers in a physical exam (Tr. 19). Finally, the medical evidence supports that the claimant was diagnosed with Grade I anterolisthesis L5 upon S1 apparently due to bilateral pars defects at L5, as well as the following MRI findings: (i) at L5-S1, grade I spondylolisthesis with bilateral pas interarticularis defects present, in addition to some broad disc bulging with foraminal spurring producing a severe right foraminal stenosis, moderate left foraminal stenosis; (ii) at L4-5, small to moderate sized central and right paracentral disc protrusion; and (iii) some loss of height posteriorly at the L5 vertebra, which appeared to be chronic (Tr. 211, 255-257). The claimant, therefore, *did* present evidence that at least suggests that he might meet Listing 1.04, *i.e.,* evidence of motor loss, and repeated positive straight-leg raising tests. Further, when an ALJ discusses all of the evidence at once at step four, it is difficult for the Court to determine what evidence the ALJ relied upon to find that the claimant did not satisfy the criteria for Listing 1.04. *See, e.g., Bates v. Barnhart,* 222 F.Supp.2d 1252, 1258 (D. Kan.2002) ("The ALJ also should have clearly indicated upon what evidence he was basing his step three determination. He discussed all of the evidence at once, including the medical evidence and the evidence he used to make his credibility assessments.

Although the ALJ may make credibility assessments at steps four and five, determinations at step three must be made purely on the medical evidence. Absent an assurance that the ALJ based his decision solely on the medical evidence, the court cannot conclude that the ALJ's step three analysis was proper.") [internal citations omitted]. In this case, the Court cannot determine that the ALJ's findings and the medical evidence of record "conclusively negate the possibility . . . that Claimant is presumptively disabled under" Listing 1.04. *Fischer–Ross,* 431 F.3d at 735.

For the reasons set forth above, the Court concludes that the decision of the Commissioner should be reversed and the case remanded to the ALJ for a proper analysis at step three.

## Conclusion

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The undersigned Magistrate Judge thus RECOMMENDS that the Court reverse the decision of the Commissioner and remand the case for further proceedings. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 10th day of September, 2014.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**